UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**JOSE SANCHEZ,**

**Plaintiff,**

**v.**

**BAY AREA RAPID TRANSIT DISTRICT, *et al.*,**

**Defendants.**

**Case No.: 13-CV-1885 YGR**

**ORDER GRANTING MOTION TO DISMISS, PARTLY GRANTING AND PARTLY DENYING MOTION TO STRIKE**

This case stems from Plaintiff Jose Sanchez's alleged slip-and-fall on the stairs leading down to the 24th Street Mission BART station in San Francisco and subsequent mistreatment while on the platform. Sanchez's Second Amended Complaint ("SAC") asserts thirteen personal injury and civil rights claims against Defendants Bay Area Rapid Transit District ("BART") and BART employee Paul Bailey (collectively, with BART, "BART Defendants"), as well as paramedics Deborah Palmer and Jennifer Ishikawa, and their employer, the City and County of San Francisco ("City"; collectively with Palmer and Ishikawa, "City Defendants"). Nine of Sanchez's thirteen claims name one or both of the BART Defendants.

The BART Defendants seek full or partial dismissal of those nine claims. Dkt. No. 23 ("MTD"). Their key contentions are two: first, that prior to removal of this action, a California state court already dismissed Sanchez's negligence claims with prejudice, and second, that California's Government Tort Claims Act bars Sanchez's civil rights claims because the facts underlying those claims are not reflected in the initial, administrative claim form Sanchez filed with

BART. The BART Defendants also move to strike Sanchez's prayer for punitive damages, along with photographs and a putative expert report attached to the SAC. Dkt. No. 25 ("MTS"). The City Defendants previously answered the SAC. Dkt. No. 24 ("Answer").

Having carefully considered the papers submitted and the pleadings in this action, and having had the benefit of oral argument, for the reasons set forth below the Court hereby **GRANTS** the BART Defendants' Motion to Dismiss. The Court **PARTLY GRANTS AND PARTLY DENIES** the Bart Defendants' Motion to Strike.

## I. BACKGROUND

### A. THE SECOND AMENDED COMPLAINT

In the procedural posture of this case, the Court assumes the truth of Sanchez's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). On January 29, 2010, Sanchez fell down the steps leading from street level to the underground 24th Street Mission BART station. SAC ¶¶ 17-21. Although the steps had "traction non-skid material strips," the strips "were worn and torn." *Id.* ¶ 22. Sanchez also alleges a defective handrail. *Id.* ¶ 23.

After Sanchez fell, he asked the station agent, Bailey, to summon paramedics. Once paramedics arrived, Bailey told them that he had seen Sanchez "walking around the station like a drunk and 'shuffling' around" and left the paramedics "with the impression that Sanchez was a drunk Mexican male either faking a stairway fall or [was] so drunk that he fell—but in either case that [Sanchez] was not in any true need of medical attention." *Id.* ¶¶ 39-40. Sanchez denies drinking that night, but for a glass of wine with dinner. *Id.* ¶¶ 44, 48.

Sanchez alleges that the paramedics: disregarded his claims of injury; mocked his "Spanish/Mexican accent"; belittled him as a drunk; threatened to call the police to have him arrested for public drunkenness; gave Sanchez a clean bill of health after only cursory examination of one of his knees; and then, despite Sanchez's protestations that he could not stand, hoisted Sanchez to his feet "via a violent and forceful yank." *Id.* ¶¶ 42, 45, 53, 57. Sanchez "was able to lock his knees to keep them from buckling" and then walked "like Frankenstein" in "hundreds of tortured steps" to the BART platform. *Id.*¶¶ 62, 56. As Sanchez walked away, he heard the paramedics mocking both his walk and his accent. *Id.* ¶ 65. Sanchez made his way to the BART

United States District Court
Northern District of California

platform unaided. *Id.* ¶ 81. From the platform, he took a BART train to a station in Alameda County, where a family member picked him up. *Id.* ¶ 83. From there, Sanchez went to the emergency room and underwent "immediate surgery." *Id.*

Based on the foregoing allegations, Sanchez asserts thirteen claims in total, nine of which name one or both of the BART Defendants and, sometimes, other defendants as well. As numbered and styled in the SAC, those claims are:

(1) negligence (against the BART Defendants)

(2) negligence per se (against BART)

(7) violation of California's Welfare & Institutions Code § 15600 *et seq.* – dependent adult abuse (against all defendants)

(8) common carrier negligence (against BART)

(9) Violation of California Government Code § 835 (against BART Defendants)

(10) violation of the Americans with Disabilities Act of 1990 (against all defendants)

(11) violation of California's Unruh Civil Rights Act (against all defendants)

(12) breach of duty to aid another harmed by Defendants' conduct (against all defendants)

(13) violations of 42 U.S.C. § 1983 (against all defendants)[1]

Sanchez seeks punitive damages against the BART Defendants in connection with Claims 7, 10, 11 and 13. The BART Defendants seek dismissal with prejudice as to eight of the nine claims. As to Claim 9, they concede that it may proceed as to BART, but seek dismissal with prejudice as to Bailey.

### B. PROCEDURAL HISTORY

California law requires persons claiming damages against a local public entity to submit an administrative claim to the entity. Cal. Gov't Code § 905; *see also id.* § 910 (governing form of claim). BART is a local public entity. *See id.* § 900.4. On June 27, 2010, Sanchez, through his attorney, submitted an administrative claim to BART. Dkt. No. 20 (Request for Judicial Notice

[1] The SAC also asserts the following claims against the City Defendants only: (3) negligence, (4) professional negligence, (5) assault, and (6) battery.

["RJN"]), Ex. E ("BART Claim").[2] The BART Claim gives the following description of the incident:

> While going down the stairs, Mr. Sanchez slipped and fell on the stairs of the 24th/Mission Street BART station in San Francisco, California.
>
> After the fall Mr. Sanchez was unable to move. Several persons attempted to help him stand up but when Mr. Sanchez tried to stand up he was unable to do so. Passengers went to get the BART attendant who came to look at Mr. Sanchez. Mr. Sanchez requested that the attendant call an ambulance.
>
> Mr. Sanchez was left to lay there until two persons from the SF Fire Dept. came. One of the Fire Dept. personnel pulled Mr. Sanchez's pants leg up and observed his knee and told him there was nothing wrong with him. They threatened him with a charge of public intoxication if he did not get up; and forced him up and made him walk onto BART which he did though he was in excruciating pain.

*Id.* at 1.

The BART Claim identifies the nature of Sanchez's injury, loss, or damage from this incident as two torn quadriceps muscles and an inability to walk for six months. *Id.* The BART Claim states that the cause of Sanchez's injury was the "condition of the stairs." *Id.* at 2. The BART Claim identifies Sanchez's damage claim as one for lost earnings resulting from his inability to work and for hospital and medical expenses. *Id.* at 2.

On January 11, 2011, Sanchez sued BART and the City, along with 100 Does, in the Superior Court of California for San Francisco County. RJN, Ex. A ("Compl."). Sanchez's original complaint set forth five causes of action: (1) general negligence as to BART, stemming from Sanchez's slip on the stairs, (2) premises liability, (3) dangerous condition of public property, (4) loss of consortium, and (5) general negligence as to the City, stemming from the paramedics' alleged mistreatment of Sanchez. The Complaint sought both compensatory and punitive damages.

On November 7, 2011, the Superior Court dismissed Sanchez's first, second, fourth, and fifth causes of action without leave to amend. RJN, Ex. B. Further, in a separate, concurrently issued order, the Superior Court struck Sanchez's prayer for punitive damages without leave to amend on the ground that "a public entity cannot be held liable for punitive damages as stated by [California] Government Code section 818." RJN, Ex. C; *see also* Cal. Gov't Code § 818

---

[2] The Court takes judicial notice of the exhibits to the RJN as "matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

("Notwithstanding any other provision of law, a public entity is not liable for damages . . . imposed primarily for the sake of example and by way of punishing the defendant.").

On December 28, 2012, Sanchez appeared ex parte and added Bailey as a Doe defendant. Bailey then demurred as to the claims against him on two grounds. First, Sanchez's complaint failed to allege sufficient supporting facts as to Bailey. Second, the complaint failed to plead sufficient facts to satisfy California's Government Tort Claims Act, Cal. Gov't Code § 810 *et seq*.

On March 15, 2013, the Superior Court sustained Bailey's demurrer in part. RJN, Ex. D. The Superior Court determined that Sanchez had sufficiently pled compliance with the Government Tort Claims Act but that he had otherwise failed to plead sufficient facts showing "Bailey's involvement in and liability for the acts complained of." *Id.* The Superior Court granted Sanchez "15 days leave to amend" to plead additional facts as to Bailey. *Id.*

On March 25, 2013, Sanchez timely filed a First Amended Complaint in Superior Court. Dkt. No. 1 (Notice of Removal), Ex. B ("FAC"). On April 24, 2013, the City Defendants removed to this Court. *Id.* On May 14, 2013, Sanchez filed the SAC.

## II. APPLICABLE LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock. Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Dismissal is proper when the complaint fails to set forth a "cognizable legal theory" that could entitle the plaintiff to relief, or "the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008). Following dismissal of a claim, leave to amend should be freely given; "[i]t is properly denied, however, if amendment would be futile." *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (citing Fed. R. Civ. P. 15(a)(2), *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010)).

Federal Rule of Civil Procedure 12(f) authorizes courts to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are not favored, but may be granted where "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystem, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).

## III. DISCUSSION

### A. Civil Rights Claims (Claims 7, 10, 11, and 13)

California law only permits a suit against a public entity for damages in tort after the plaintiff has filed a written administrative claim containing a description of the incident at issue, and the claim has been rejected. *See* Cal. Gov't Code §§ 910, 945.4; *Sparks v. Kern Cnty. Bd. of Supervisors*, 173 Cal. App. 4th 794, 798 (2009). "If a plaintiff relies on more than one theory of recovery against the State, *each* cause of action must have been reflected in a timely claim." *Nelson v. State of California*, 139 Cal. App. 3d 72, 79 (Cal. Ct. App. 1982). The claim "need not contain the detail and specificity required of a pleading, but need only fairly describe what the entity is alleged to have done." *Connelly v. Cnty. of Fresno*, 146 Cal. App. 4th 29, 37-38 (2006) (quoting *Stockett v. Ass'n of California Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 447 (Cal. 2004)) (internal quotation marks and brackets omitted). However, "the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint." *Nelson*, 139 Cal. App. 3d at 79. Claims based on "an entirely different set of facts" are barred. *Stockett*, 34 Cal. 4th at 447 (internal quotation marks omitted).

Here, Sanchez satisfied the requirement of filing an administrative claim with BART before suing the BART Defendants in tort. *See* BART Claim. However, while the BART Claim fairly reflects Sanchez's negligence causes of action against the BART Defendants, it does not reflect the civil rights violations he has asserted against them.[3] Neither the BART Claim's account of the events at the BART station, nor his statements about the nature of his injuries, their cause, nor the damages flowing therefrom, suggest that Sanchez would or could bring claims for dependent elder abuse or for violations of the ADA, Unruh Act, or § 1983. The BART Claim does not state or even imply that Sanchez was subjected to the discriminatory and humiliating conduct alleged in the SAC. *E.g.*, SAC ¶¶ 45 (paramedics "commenced humiliating and mocking [Sanchez's]

---

[3] The record does not disclose whether Sanchez filed an administrative claim pursuant to the Government Tort Claims Act in connection with his claims against the City Defendants. The City Defendants answered the SAC, hence the sufficiency of any such claim against the City Defendants, if one was required, is not before the Court. Accordingly, the Court expresses no view on the applicability of the analysis herein to Sanchez's claims against the City Defendants.

United States District Court
Northern District of California

Spanish/Mexican accent"), 66 (paramedics mocked Sanchez for "Frankenstein walk" necessitated by his injuries, as well as his accent). Neither does it state or imply that Sanchez held the status of a dependent adult or a person "disabled" within the meaning of the ADA.[4] Those omissions are particularly glaring in light of the Claim's specific account of Sanchez's having been threatened by the paramedics with a charge of public intoxication. Claim at 1. Given that Sanchez seeks to inculpate BART and Bailey for the acts of the paramedics, *see* Dkt. No. 26 ("Opp'n") at 11-12, to be consistent with the SAC Sanchez's BART Claim would have to reflect not only the threat of a public intoxication charge but also the paramedics' other, more inflammatory alleged statements. It does not.

The facts set forth in the BART Claim reflect, at most, Sanchez's negligence claims against the BART Defendants. They do not, however, reflect *each* cause of action against the BART Defendants, as required by California law. *Nelson*, 139 Cal. App. 3d at 79. Said another way, the facts in the BART Claim do not "correspond" to the facts from which Sanchez's civil rights claims arise. *Id.* Those claims are premised on entirely different facts than those reflected in the BART Claim. *Stockett*, 34 Cal. 4th at 447. Accordingly, those claims may not proceed. The Court hereby **GRANTS** the Bart Defendants' motion to dismiss Sanchez's civil rights claims and **DISMISSES WITH PREJUDICE** Claims 7, 10, 11, and 13 as to the BART Defendants. Those claims remain undisturbed as to the City Defendants, who have answered.

### B. GENERAL NEGLIGENCE CLAIMS (CLAIMS 1 AND 2)

#### 1. Against BART

BART seeks dismissal of the negligence claims against it because the state court previously sustained its demurrer without leave to amend. When a case is removed from state court to federal court, as this one was, the federal court "takes the case up where the State left it off," and hence gives the same effect to prior state court rulings that the state court would. *Jenkins v. Commonwealth Land Title Ins. Co.*, 95 F.3d 791, 795 (9th Cir. 1996); *see also Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S.

[4] The Court need not and does not reach the questions of whether Sanchez actually was "disabled" or "dependent" for purposes of his ADA or his dependent elder abuse claims.

423, 436 (1974) ("Congress clearly intended to preserve the effectiveness of state court orders after removal . . . ."). Here, the state court dismissed Sanchez's negligence claims against BART for the alleged fall *with prejudice*. His present negligence claims rest on substantially the same fact allegations presented to the state court: Sanchez slipped, fell, sustained injury, and was made to wait for paramedics to arrive after BART personnel summoned them. *Compare* Compl., Cause of Action 1 *with* SAC ¶¶ 94-102. To the extent that Sanchez's negligence claims are encompassed within the cause of action already dismissed without leave to amend by the state court, they are barred as to BART. Thus, the state court judgment bars Sanchez's claims of negligence (Claim 1) and negligence per se (Claim 2) because they are based on Sanchez's fall.[5]

For the foregoing reasons, Sanchez's general negligence claims against BART fail as a matter of law. The Court therefore **GRANTS** the BART Defendants' motion to dismiss Claims 1 and 2 as to BART. Those claims are **DISMISSED WITH PREJUDICE** as to BART.

**2. Against Bailey**

With respect to the negligence claim against Bailey, the BART Defendants raise three grounds for dismissal: one, the Superior Court's prior ruling on Bailey's demurrer, two, the BART Claim's account of Bailey's involvement, and three, the SAC's insufficiency.

First, the Superior Court dismissed Sanchez's negligence claims against Bailey, but granted leave to amend the Complaint. RJN, Ex. D. Sanchez timely filed the FAC. Therefore, the Superior Court's previous rulings present no bar to Sanchez's negligence claims against Bailey.

Second, contrary to the BART Defendants' arguments, Sanchez's Claim fairly reflects information that might lead to *some* colorable negligence claim against Bailey, since it describes Sanchez's fall and the presence of a "BART attendant," and raises the specter of inappropriate conduct on the part of the BART attendant insofar as it states that BART patrons had to summon the BART attendant and that, once the attendant arrived, Sanchez was "left to lay there." RJN, Ex.

[5] The Court rejects Sanchez's assertion that he may resurrect his previously dismissed claims because of information he learned while deposing Defendants Ishikawa and Palmer, the paramedics who arrived on the night of Sanchez's fall. *See* Opp'n at 8-9. Sanchez contends that this Court must disregard the earlier state court Order dismissing his claims *as to BART* because, at the time the Superior Court dismissed those claims, it did not have before it Sanchez's newly discovered information about *the paramedics*. The argument is a red herring.

E. As such, Sanchez gave BART "adequate information" to conduct an investigation into causes of action for premise liability and negligence. *Stockett*, 34 Cal. 4th at 449.

Third, the BART Defendants argue that the SAC's allegations, even if true, fail to state a cognizable claim. Sanchez posits three reasons why Bailey is liable to Sanchez for negligence: (i) Bailey was the BART agent in charge of the station at the time of the fall, (ii) Bailey's interaction with the paramedics caused the paramedics to develop "a preconceived notion" of Sanchez as a "drunken menace," which caused them to fail to assess Sanchez's medical condition accurately, and (iii) Bailey is directly liable for the acts of the paramedics themselves because he "placed Sanchez in peril by his actions." Opp'n at 10-12.

The Court is not persuaded. First, the SAC does not allege that Bailey was ultimately in charge of the BART station. Second, even if the Court assumes arguendo that Bailey *was* in charge, that by itself would not impose dangerous-conditions liability on Bailey. As the BART Defendants pointed out at oral argument, to hold Bailey liable for dangerous conditions in the BART station, Sanchez would have to satisfy California Government Code section 840.2.[6] Sanchez's allegations address none of the elements of that standard. Third, Sanchez provides no authority for the novel proposition that Bailey, merely by speaking to the paramedics, became

---

[6] An employee of a public entity is liable for injury caused by a dangerous condition of public property if the plaintiff establishes that the property of the public entity was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

(a) The dangerous condition was directly attributable wholly or in substantial part to a negligent or wrongful act of the employee and the employee had the *authority* and the *funds* and other means *immediately available* to take alternative action which would not have created the dangerous condition; or

(b) The employee had the *authority* and *it was his responsibility* to take adequate measures to protect against the dangerous condition at the expense of the public entity and the *funds and other means for doing so were immediately available* to him, and he had actual or constructive *notice* of the dangerous condition under Section 840.4 a *sufficient time prior to the injury* to have taken measures to protect against the dangerous condition.

Cal. Gov't Code § 840.2 (emphases supplied).

liable in tort for their later, allegedly tortious provision of medical treatment or their alleged mockery, humiliation, and abuse.

To the extent that the paramedics' tortious acts consist of improper medical treatment, Sanchez cites no authority establishing that Bailey had either the duty or the authority to guide the paramedics in their provision of medical care. On the contrary, there is no duty to control the acts of third parties in the absence of a special relationship giving rise to such a duty. *Zepeda v. City of Los Angeles*, 223 Cal. App. 3d 232, 235 (Cal. Ct. App. 1990); Restatement (Second) of Torts § 315 (1965); 6 Witkin, SUMMARY 10th (2005) TORTS, § 1038, p. 332. Sanchez has failed to plead facts that would impose such a duty.

To the extent that the paramedics' alleged wrongs consist of rough treatment and mockery of Sanchez, Sanchez supplies no reason why Bailey had a duty to prevent that conduct, protect Sanchez from it, or render aid to him once it occurred. "[O]ne's general duty to exercise due care includes the duty not to place another person in a situation in which the other person is exposed to an unreasonable risk of harm through the reasonably foreseeable conduct (including the reasonably foreseeable negligent conduct) of a third person." *Camp v. State*, 184 Cal. App. 4th 967, 976 (Cal. Ct. App. 2010) (quoting *Lugtu v. California Highway Patrol*, 26 Cal. 4th 703, 716 (Cal. Ct. App. 2001)); *see also Zepeda*, 223 Cal. App. 3d at 235 (no general duty to aid another absent a special relationship giving rise to such duty, as when one's promise to aid induces detrimental reliance); *Williams v. State of California*, 34 Cal. 3d 18, 24 (1983) (same). Here, Sanchez argues that Bailey had a duty to aid Sanchez because he misinformed the paramedics about Sanchez's true condition and the paramedics, "but for" Bailey's alleged misrepresentations, would have properly aided Sanchez. Opp'n at 10-12. Sanchez alleges that Bailey misinformed the paramedics that Sanchez was drunk, had been seen shuffling around the station, had faked a stairway fall, and was in no true need of medical assistance. SAC ¶¶ 38-40. Assuming the truth of Sanchez's allegations, the Court determines that Bailey cannot be held liable in negligence for the paramedic's acts because the alleged misconduct of the paramedics—race-based mockery, assault, and battery—lies outside the scope of any conduct Bailey reasonably could have foreseen when making the alleged misrepresentations. *Camp*, 184 Cal. App. 4th at 976. Further, the Court cannot find that Bailey

United States District Court
Northern District of California

had any affirmative duty to aid Sanchez, because the SAC is devoid of allegations that Bailey promised such aid. On the contrary, the SAC stresses that Bailey did not offer Sanchez aid. *E.g.*, *id.* ¶ 81. In the absence of a promise to aid and detrimental reliance thereon, no special relationship between Bailey to Sanchez arose. *Camp*, 184 Cal. App. 4th at 976-77. Sanchez has pled no cognizable legal theory holding Bailey liable in tort for the alleged acts of the paramedics.

More than three years have elapsed since the alleged incidents of January 2010. Since then, in a formal administrative claim and three iterations of a complaint, the last of which Sanchez filed after taking Bailey's deposition, Sanchez has failed to identify any cognizable basis for holding Bailey liable in negligence for the events of January 2010. The Court hereby **GRANTS** the BART Defendants' motion to dismiss Claim 1 as to Bailey. That claim, which Sanchez asserted against only BART and Bailey, is **DISMISSED WITH PREJUDICE** in its entirety.

**C. COMMON CARRIER NEGLIGENCE (CLAIM 8)**

The BART Defendants seek dismissal of Sanchez's claim for "common carrier negligence" because it fails to state a cognizable legal claim under the facts of this case. As an initial matter, the Court agrees with the BART Defendants that this heightened duty is but one element of a general negligence claim, not a claim unto itself. However, the Court liberally construes Sanchez's pleading as a variant on his general negligence claim and analyzes his common carrier negligence "claim" as such.

California law imposes on common carriers a duty to exercise "the highest degree of care" toward their passengers. *Marshall v. United Airlines*, 35 Cal. App. 3d 84, 86-87 (Cal. Ct. App. 1973). However, this duty applies only while the passengers are in transit. Where the conduct at issue occurs before passengers board a common carrier's vehicle, or after they have disembarked, only a duty of "reasonable care" applies. *Id.* Here, none of the alleged events giving rise to Sanchez's claims occurred while Sanchez was aboard a BART train. Accordingly, the heightened duty of common carriers did not apply at the time Sanchez suffered his fall or encountered Bailey, even assuming *arguendo* that all other conditions for imposing that duty were satisfied.

The Court hereby **GRANTS** the BART Defendants' motion to dismiss Claim 8. That claim is **DISMISSED WITH PREJUDICE**.

United States District Court
Northern District of California

**D. VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 835 (CLAIM 9)**

Defendant Bailey alone challenges Sanchez's section 835 claim. Under section 835, "a public *entity* is liable for injury caused by a dangerous condition of [their] property . . . ." Cal. Gov't Code § 835 (emphasis supplied). Because California's Government Tort Claims Act "draws a clear distinction between the liability of a public entity based on its own conduct, and the liability arising from the conduct of a public employee," *Zelig*, 27 Cal. 4th at 1127, section 835, which speaks only of public entities, does not impose liability on public employees. Sanchez, however, asserts his section 835 claim against both BART and Bailey. The BART Defendants concede that it may proceed as to BART but argue that it must be dismissed as to Bailey because section 835 provides no cause of action against public employees. Dkt. No. 27 at 7.

The BART Defendants are correct. The Court notes that both Sanchez's SAC and his opposition brief address only public entity liability under section 835, not public employee liability. SAC ¶¶ 173-84 (omitting mention of § 840); Opp'n at 14-15 (same). At oral argument, however, Sanchez appeared to argue that Bailey could be held liable under section 840.2. As the Court discussed in Section III.B.2 *supra*, section 840.2 permits liability against public employees only if, among other things, the public employee had the authority, obligation, opportunity, and immediately available means to prevent the dangerous condition. Sanchez has failed to identify facts responsive to this standard in either his pleading or at oral argument, despite having taken Bailey's deposition *before* filing the SAC. *See* SAC ¶ 38. Given Sanchez's ample opportunity to state a cognizable claim against Bailey, the Court concludes that granting leave to amend this claim would be futile. Accordingly, the Court hereby **GRANTS** the BART Defendants' motion to dismiss Claim 9 as to Bailey only. Leave to amend is denied. The claim remains undisturbed as to BART itself.

**E. BREACH OF DUTY TO AID ANOTHER HARMED BY DEFENDANTS' CONDUCT (CLAIM 12)**

Sanchez's twelfth claim seeks to hold BART liable in negligence on the basis that BART allegedly breached its duty to aid Sanchez after causing his peril at the BART station. The BART

United States District Court
Northern District of California

Defendants seek dismissal of the claim on the ground that the allegations of the SAC, taken as true, do not support imposing that duty on BART and therefore BART did not breach it.

Sanchez bases his twelfth claim on section 322 of the Restatement (Second) of Torts:

> If the actor knows or has reason to know that by his conduct, whether tortious or innocent, he has caused such bodily harm to another as to make him helpless and in danger of further harm, the actor is under a duty to exercise reasonable care to prevent such further harm.

Restatement (Second) of Torts § 322 (1965). California has recognized a common-law duty consistent with the Restatement. In *Brooks*, the California Supreme Court held a driver liable for failing to stop to render aid to a pedestrian he had struck and whom thereafter was run over and killed by a different vehicle as he lay helpless in the road. *Brooks v. E. J. Willig Truck Transp. Co.*, 40 Cal. 2d 669, 680 (Cal. 1953). Fifty years later, in *Avila*, the Court acknowledged the duty identified in *Brooks* but found it did not apply in a case where a community college baseball player sought to hold a community college district liable for "failing to provide him with medical care after he was injured" in an informal, pre-season game. *Avila v. Citrus Cmty. Coll. Dist.*, 38 Cal. 4th 148, 166 (Cal. 2006). The ballplayer was injured while batting when the opposing team's pitcher threw a "beanball" that struck him in the head. *Id.* at 152. Pursuant to the rules of baseball, the hit batsman proceeded to first base and then, for reasons not evident, to second base. *Id.* at 153. At that point, a fielder for the opposing team alerted the hit batsman's coaches to his injury, and the injured player's coaches replaced him with a pinch-runner. *Id*. The injured player walked off the field on his own power. *Id.*

The *Avila* Court refused to find that a *Brooks* duty applied to the hit batsman for three reasons. First, he failed to allege that the community college district itself had caused his injury. *Id.* at 167. Second, the duty recognized in *Brooks* is "confined to situations where the injured party is helpless," but in *Avila* the complaint "establishe[d] that [the hit batsman] was able to make it to first and then second base under his own power" and "alert his own first base coach to his condition." *Id.* Third, the *Avila* Court determined that, even if the district had a duty to the hit batsman, it would have had at most "a duty to ensure that [the batsman's] coaches and trainers," who were present at the game, "were aware he had been injured so they could decide how best to

attend to him." *Id.* at 168. The *Avila* Court based this conclusion on its determination that those coaches and trainers, rather than the district, "had exclusive authority to determine whether [the batsman] needed to be removed from the game for a pinch runner." *Id.* at 167.

Here, *Avila* controls. The SAC alleges that BART and Bailey created the hazards which befell Sanchez. Accepting those allegations as true and giving Sanchez the benefit of every reasonable inference, the SAC still does not support the imposition of a *Brooks*-type duty to render aid. The SAC does not allege Sanchez's helplessness within the meaning of *Avila* and *Brooks*. After his encounter with the paramedics, Sanchez proceeded to the station platform unaided, where he boarded a train and rode it to a station in Alameda County. SAC at 2; ¶¶ 81, 83. This is directly analogous to the batsman who made it to first base, then second base, and then off the field of play entirely under his own power. Further, the allegations of the SAC disclose that, even if Sanchez was not able to help himself, he was able to use his cell phone to call his family. *Id.* ¶ 36. He also was in a position to receive aid from other BART patrons, and indeed actually received such aid. *E.g.*, *id.* ¶ 33 (Sanchez "managed to plead with other BART patrons who came to his aid"). This is the same as the injured batsman in *Avila*, who was able to alert his coaches and trainers to his distress. Sanchez was not "helpless" within the meaning of the Restatement, *Brooks*, or *Avila*. Further, the SAC discloses that Bailey alerted the persons who had actual authority to care for Sanchez: the paramedics. SAC ¶¶ 35, 38. That the paramedics were allegedly negligent, even malicious, in their provision of care does not affect the fact that Bailey discharged his duty, as well as BART's, if either had such a duty. *Cf. Avila*, 38 Cal. 4th at 167-68 (assuming community college district had any duty to aid injured batsman, it discharged that duty when second baseman alerted injured batsman's team of injury).

No amendment consistent with the allegations already before the Court could cure these deficiencies. Accordingly, the Court determines that further amendment of Claim 12 would be futile. The Court hereby **GRANTS** the Bart Defendants' motion to dismiss Claim 12. That Claim is hereby **DISMISSED WITH PREJUDICE** as to the BART Defendants. As to the City Defendants, who have answered the SAC, it remains undisturbed.

///

United States District Court
Northern District of California

United States District Court
Northern District of California

### F. MOTION TO STRIKE

The BART Defendants ask the Court to strike Sanchez's prayer for punitive damages on two grounds. First, with respect to BART, the Superior Court already struck Sanchez's prayer for punitive damages from BART pursuant to Government Code section 818, which provides that BART, as a public entity, is not subject to punitive damages.[7] Second, with respect to Bailey, if all the claims against him have been dismissed, no basis for punitive damages exists. The Court agrees with both propositions. Sanchez's prayer for punitive damages from BART and Bailey can have no possible bearing on the case. *Colaprico*, 758 F. Supp. at 1339. Accordingly, the Court **STRIKES** it with respect to the BART Defendants; as to Bailey, the issue is moot.

The BART Defendants also ask the Court to strike a putative expert report and photographs attached to the SAC on the ground that they are not "written instruments" within the meaning of Federal Rule of Civil Procedure 10(c).[8] That request is **DENIED**. There is "'no inflexible rule' governing the sort of 'written instruments' that may be attached to a pleading." *In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 821 (C.D. Cal. 2011) (quoting *DLJ Mortgage Capital, Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 234 (E.D.N.Y. 2010)). Expert reports and photographs are commonly attached to complaints and the BART Defendants have not persuaded the Court that the materials in this case are "redundant, immaterial, impertinent, or scandalous," as contemplated by Rule 12(f). The Court expresses no opinion as to whether Sanchez's materials would be ultimately admissible in evidence for purposes of trial, summary judgment, or other proceedings.

///

///

---

[7] Sanchez mischaracterizes the Superior Court proceedings in his opposition to the motion to strike by focusing on the fact that the order granting BART's *demurrer*—as opposed to its order to *strike*—"contains not a word about subsequent amendments." Dkt. No. 28 at 2. That statement ignores the existence of the Superior Court's order striking Sanchez's "prayer for punitive damages against defendant BART . . . *without leave to amend*." RJN, Ex. C (emphasis supplied). Sanchez's counsel is reminded that Rule 11 requires "an inquiry reasonable under the circumstances" before presenting facts or argument to the Court. Fed. R. Civ. P. 11(b).

[8] "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the BART Defendant's Motion to Dismiss. The Second Amended Complaint's first, second, and eighth claims are **DISMISSED WITH PREJUDICE** in their entirety. The Second Amended Complaint's ninth claim, for dangerous condition of public property, is **DISMISSED WITH PREJUDICE** as to Bailey but remains undisturbed as to BART. The Second Amended Complaint's tenth, eleventh, twelfth, and thirteenth claims are **DISMISSED WITH PREJUDICE** as to the BART Defendants, but remain undisturbed as to the City Defendants, who have answered the Second Amended Complaint. The Second Amended Complaint's third, fourth, fifth, and sixth claims, which name only the City Defendants, were answered and thus also remain undisturbed.

In summary, the Second Amended Complaint now asserts the claims listed below, as numbered and styled therein:

(3) negligence (against the City Defendants)

(4) professional negligence (against the City Defendants)

(5) assault (against the City Defendants)

(6) battery (against the City Defendants)

(7) violation of California's Welfare & Institutions Code § 15600 *et seq.* – dependent adult abuse (against the City Defendants)

(9) violation of California Government Code § 835 (against BART)

(10) violation of the Americans with Disabilities Act of 1990 (against the City Defendants)

(11) violation of California's Unruh Civil Rights Act (against the City Defendants)

(12) breach of duty to aid another harmed by Defendants' conduct (against the City Defendants)

(13) violations of 42 U.S.C. § 1983 (against the City Defendants)

The Court hereby **PARTLY GRANTS AND PARTLY DENIES** the Bart Defendants' motion to strike. Sanchez's prayer for punitive damages is hereby **STRUCK** with respect to the Bart

Defendants. The photographs and the expert report attached to Sanchez's Second Amended Complaint remain undisturbed.

This Order terminates Docket Nos. 23 and 25.

**IT IS SO ORDERED.**

Date: September 5, 2013

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California